

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
―――――――――――――――――X
DAVID CORNELIO,

        Plaintiff,

   -against-

COVENANT TRANSPORTATION, INC.
and JOHN P. MARCUM,

        Defendants.
―――――――――――――――――X

Civil Action Number:
3:02CV2279 (GLG)

DISCLOSURE OF
EXPERT WITNESS

November 10, 2003

### PLAINTIFF'S RULE 26 EXPERT DISCLOSURE

Pursuant to Connecticut Federal Rules of Civil Procedure § 26(a)(2), the plaintiff discloses DR. RICHARD M. FOGEL, of 150 East Avenue, Norwalk, CT 06851 as an expert witness. Dr. Fogel will testify that as a result of the motor vehicle accident of September 27, 2001, the plaintiff, DAVID CORNELIO, suffered a cervical strain/sprain; a dorsal strain/sprain; and a lumbar strain/sprain, resulting in an 8% permanent partial impairment to the cervical spine and an 8% permanent partial impairment to the lumbar spine, for a total of 16% permanent partial impairment. Dr. Fogel's opinion will be based upon his treatment and observations of plaintiff, radiographic examination, and his review of the plaintiff's medical records, in conjunction with his training, education, and experience as a chiropractic physician. Dr. Fogel's report dated February 28, 2002 is annexed hereto.

THE PLAINTIFF,

BY: _____
Bruce J. Corrigan, Jr.
Law Offices of Bruce J. Corrigan, Jr.
1853 Post Road East
Westport, CT 06880
203.255-1950
203.255.1520 (fax)
Federal Bar Number: CT06918

BY: _____
J. Stacey Yarbrough
Law Offices of Bruce J. Corrigan, Jr.
1853 Post Road East
Westport, CT 06880
203. 255-1950
203.255.1520 (fax)
Federal Bar Number: CT24444

## CERTIFICATION OF SERVICE

    This is to certify that a copy of the foregoing, on the aforementioned date, has been sent, via first class mail, postage prepaid to:

Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
3 Gannett Drive
White Plains, New York 10604

                                  BRUCE J. CORRIGAN, JR.

                                  J. STACEY YARBROUGH

Dr. Richard M. Fogel
Chiropractic Physician
150 East Avenue
Norwalk, CT 06851

--------------------

Telephone (203) 838-0388
Fax (203) 838-9505

February 28, 2002

Attorney Bruce Corrigan, Jr.
1853 Post Road East
Westport, CT 06880

Re: David Cornelio
D/A: 9/27/01

Dear Attorney Corrigan:

This 54-year-old male presents to my office on 10/4/01 for injuries sustained in a motor vehicle accident occurring on 9/27/01.

**HISTORY:**
Patient stated that he was the operator of his motor vehicle traveling on I-95 Southbound near exits 27 and 28 in Bridgeport, CT when his vehicle was struck by a tractor trailer that was in the left lane. Patient believes that he was struck from the back or the rear. The impact caused the patient's vehicle to spin bouncing off of the Jersey barrier once or twice. After his vehicle came to a stop, it turned around. Following the accident the patient went to Bridgeport Hospital where he was treated, x-rayed, had an IV and released. Patient is currently taking 800 milligrams of Ibuprofen twice a day. Patient presents to this office with neck pain at the base of the neck, mid back pain, low back pain, headaches and an abrasion of his right elbow. Neck movements are very stiff and during rotation he feels as to what he describes as a "grating" sound. Neck movements are guarded and slow. Patient walks in a slow and guarded manner. Patient has difficulty arising from a seated to a standing position. Twisting and turning are uncomfortable. Patient is very uncomfortable.

**ORTHOPEDIC EXAMINATION:**
Orthopedic examination, which was obtained on the patient's first visit on 10/4/01, reveals lumbar forward flexion to be decreased 50 degrees and extension is decreased 30 degrees. Valsalva is positive. There is scoliosis of the dorsal and lumbar spine. There is a low right iliac crest. There is a positive cervical Compression and Distraction test. Cervical bilateral rotation is decreased 50 degrees and bilateral lateral flexion is decreased 20 degrees. There is spinous tenderness at C5-6-7-T1.

-1-

Page 2 (David Cornelio continued)

There are trigger points of the right and left trapezius, right and left sternocleidomastoid and right and left rhomboid. There is paravertebral spasm. Lumbar extension is decreased 35-40 degrees. Valsalva is positive.

**DIAGNOSIS:**
The patient is diagnosed with a cervical strain/sprain, a dorsal strain/sprain and a lumbar strain/sprain. Injuries are causally related and there are no pre-existing conditions.

**RADIOGRAPHS:**
Radiographs were obtained from Bridgeport Hospital on 9/27/01 and cervical spine. In the cervical spine, there is some straightening of the cervical lordosis that appears to be related to the patient's supine position.

**TREATMENT:**
Treatment to date has consisted of spinal manipulation, physical therapeutics, cryo-gel and ice packs for pain and swelling and immobilization of the lumbar spine with a lumbar orthopedic support during the acute stage.

**CONCLUSION:**
Patient treated through 2/25/02. At the time of his last visit, the patient continued to complain of neck and low back pain. The neck pain is located on the right side. Patient did have difficulty getting off of the table without assistance. Patient also complains of pain over the right flank and was advised to see his internist to rule out kidney pathology. In the cervical and lumbar spine, there is a limited range of motion. Radiographs obtained from Bridgeport Hospital on 9/27/01 of the cervical spine revealed straightening of the cervical lordosis that appears to be related to the patient's supine position. Patient was advised to continue daily stretching exercises.

**PERMANENT PARTIAL IMPAIRMENT:**
Permanent partial impairment is defined as a loss, loss of use or derangement of any body part, organ system or organ function as defined on page 3, table 1-1 of the definitions and interpretations of impairment and disability in the AMA Guidelines for Medical Disability Impairment Ratings, Fifth Edition. The definition of maximum medical improvement is a condition that is well stabilized and unlikely to change in the next year, with or without medical treatment as defined on page 2, table 1-2 of the definitions and interpretations of impairment and disability in the AMA Guidelines for Medical Disability Impairment Ratings, Fifth Edition. Based upon the AMA Guidelines for Medical Disability Impairment Ratings, Fifth Edition, chapter 15, table 15-5, this patient has suffered an 8% permanent partial impairment to the cervical spine and based upon the AMA Guidelines for Medical Disability Impairment Ratings, Fifth Edition, this patient has suffered an 8% permanent partial impairment to the lumbar spine for a total of 16% permanent partial impairment.

Page 3 (David Cornelio continued)

These impairments are based upon a limited cervical and lumbar range of motion and continued pain, stiffness and tightness in the cervical and lumbar spine. This patient has suffered a soft tissue injury to the cervical and lumbar spine where articulating surfaces have been wrenched apart and as a result healing has been incomplete. It is my opinion that there is a degree of medical certainty that future medical expense will be necessary.

If I may provide you with any additional information, please contact my office.

Sincerely,

*[signature]*

Richard M. Fogel, D.C.

RMF:tlm

Enclosure

## 15.6 DRE: Cervical Spine

### 15.6a Criteria for Rating Impairment Due to Cervical Disorders

For cervical problems localized to the cervical or cervicothoracic region, use Table 15-5. If the cervical spine problem also leads to isolated bowel and/or bladder dysfunction not due to corticospinal damage, obtain the appropriate estimates for bowel and bladder dysfunction from the gastrointestinal and urology chapters (Chapters 6 and 7) and combine these with the appropriate cervical spine DRE category from DRE I to V, listed in Table 15-5. If the cervical spine problem is due to corticospinal tract involvement, use Table 15-6 alone.

The DRE cervical categories are summarized in Table 15-5.

**Table 15-5** Criteria for Rating Impairment Due to Cervical Disorders

| DRE Cervical Category I 0% Impairment of the Whole Person | DRE Cervical Category II 5%-8% Impairment of the Whole Person | DRE Cervical Category III 15%-18% Impairment of the Whole Person | DRE Cervical Category IV 25%-28% Impairment of the Whole Person | DRE Cervical Category V 35%-38% Impairment of the Whole Person |
|---|---|---|---|---|
| No significant clinical findings, no muscular guarding, no documentable neurologic impairment, no significant loss of motion segment integrity, and no other indication of impairment related to injury or illness; no fractures | Clinical history and examination findings are compatible with a specific injury; findings may include muscle guarding or spasm observed at the time of the examination by a physician, asymmetric loss of range of motion or nonverifiable radicular complaints, defined as complaints of radicular pain without objective findings; no alteration of the structural integrity<br><br>or<br><br>individual had clinically significant radiculopathy and an imaging study that demonstrated a herniated disk at the level and on the side that would be expected based on the radiculopathy, but has improved following nonoperative treatment<br><br>or<br><br>fractures: (1) less than 25% compression of one vertebral body; (2) posterior element fracture without dislocation that has healed without loss of structural integrity or radiculopathy; (3) a spinous or transverse process fracture with displacement | Significant signs of radiculopathy, such as pain and/or sensory loss in a dermatomal distribution, loss of relevant reflex(es), loss of muscle strength, or unilateral atrophy compared with the unaffected side, measured at the same distance above or below the elbow; the neurologic impairment may be verified by electrodiagnostic findings<br><br>or<br><br>individual had clinically significant radiculopathy, verified by an imaging study that demonstrates a herniated disk at the level and on the side expected from objective clinical findings with radiculopathy or with improvement of radiculopathy following surgery<br><br>or<br><br>fractures: (1) 25% to 50% compression of one vertebral body; (2) posterior element fracture with displacement disrupting the spinal canal; in both cases the fracture is healed without loss of structural integrity; radiculopathy may or may not be present; differentiation from congenital and developmental conditions may be accomplished, if possible, by examining preinjury roentgenograms or a bone scan performed after the onset of the condition | Alteration of motion segment integrity or bilateral or multilevel radiculopathy; alteration of motion segment integrity is defined from flexion and extension radiographs as at least 3.5 mm of translation of one vertebra on another, or angular motion of more than 11° greater than at each adjacent level (Figures 15-3a and 15-3b); alternatively, the individual may have loss of motion of a motion segment due to a developmental fusion or successful or unsuccessful attempt at surgical arthrodesis; radiculopathy as defined in cervical category III need not be present if there is alteration of motion segment integrity<br><br>or<br><br>fractures: (1) more than 50% compression of one vertebral body without residual neural compromise | Significant upper extremity impairment requiring the use of upper extremity external functional or adaptive device(s); there may be total neurologic loss at a single level or severe, multilevel neurologic dysfunction<br><br>or<br><br>fractures, structural compromise of the spinal canal is present with severe upper extremity motor and sensory deficits but without lower extremity involvement |

Chapter 15

In cases where the abnormalities discussed above are present on imaging studies and are known or assumed to have preexisted an injury being rated, physicians should acknowledge these antecedent conditions. If requested, physicians may need to assess whether the condition was previously symptomatic and whether any aggravation occurred as a result of the injury. Physicians should be aware of the statutory definition in the involved jurisdiction pertaining to *aggravation* to ensure their use of the term is consistent with their state's legal interpretation.

DRE categories are discussed in the following three sections.

## 15.4 DRE: Lumbar Spine

The lumbar spine DRE categories are summarized in Table 15-3. Apart from category I, each category includes a range to account for the resolution or continuation of symptoms and their impact on the ability to perform ADL.

**Table 15-3** Criteria for Rating Impairment Due to Lumbar Spine Injury

| DRE Lumbar Category I<br>0% Impairment of the Whole Person | DRE Lumbar Category II<br>5%-8% Impairment of the Whole Person | DRE Lumbar Category III<br>10%-13% Impairment of the Whole Person | DRE Lumbar Category IV<br>20%-23% Impairment of the Whole Person | DRE Lumbar Category V<br>25%-28% Impairment of the Whole Person |
|---|---|---|---|---|
| No significant clinical findings, no observed muscle guarding or spasm, no documentable neurologic impairment, no documented alteration in structural integrity, and no other indication of impairment related to injury or illness; no fractures | Clinical history and examination findings are compatible with a specific injury; findings may include significant muscle guarding or spasm observed at the time of the examination, asymmetric loss of range of motion, or nonverifiable radicular complaints, defined as complaints of radicular pain without objective findings; no alteration of the structural integrity and no significant radiculopathy<br><br>*or*<br><br>individual had a clinically significant radiculopathy and has an imaging study that demonstrates a herniated disk at the level and on the side that would be expected based on the previous radiculopathy, but no longer has the radiculopathy following conservative treatment<br><br>*or*<br><br>fractures: (1) less than 25% compression of one vertebral body; (2) posterior element fracture without dislocation (not developmental spondylolysis) that has healed without alteration of motion segment integrity; (3) a spinous or transverse process fracture with displacement without a vertebral body fracture, which does not disrupt the spinal canal | Significant signs of radiculopathy, such as dermatomal pain and/or in a dermatomal distribution, sensory loss, loss of relevant reflex(es), loss of muscle strength or measured unilateral atrophy above or below the knee compared to measurements on the contralateral side at the same location; impairment may be verified by electrodiagnostic findings<br><br>*or*<br><br>history of a herniated disk at the level and on the side that would be expected from objective clinical findings, associated with radiculopathy, or individuals who had surgery for radiculopathy but are now asymptomatic<br><br>*or*<br><br>fractures: (1) 25% to 50% compression of one vertebral body; (2) posterior element fracture with displacement disrupting the spinal canal; in both cases, the fracture has healed without alteration of structural integrity | Loss of motion segment integrity defined from flexion and extension radiographs as at least 4.5 mm of translation of one vertebra on another or angular motion greater than 15° at L1-2, L2-3, and L3-4, greater than 20° at L4-5, and greater than 25° at L5-S1 (Figure 15-3); may have complete or near complete loss of motion of a motion segment due to developmental fusion, or successful or unsuccessful attempt at surgical arthrodesis<br><br>*or*<br><br>fractures: (1) greater than 50% compression of one vertebral body without residual neurologic compromise | Meets the criteria of DRE lumbosacral categories III and IV; that is, both radiculopathy and alteration of motion segment integrity are present; significant lower extremity impairment is present as indicated by atrophy or loss of reflex(es), pain, and/or sensory changes within an anatomic distribution (dermatomal), or electromyographic findings as stated in lumbosacral category III and alteration of spine-motion segment integrity as defined in lumbosacral category IV<br><br>*or*<br><br>fractures. (1) greater than 50% compression of one vertebral body with unilateral neurologic compromise |